# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**UNITED STATES OF AMERICA**            :

                        v.                        :            **CRIMINAL NO. 11-068 (JBS)**

**BRANDON ANTHONY**                        :

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PRETRIAL MOTIONS

---

**Maggie F. Moy, Esq.**
**Assistant Federal Public Defender**
**800-840 Cooper Street**
**Suite 350**
**Camden, New Jersey 08102**
**maggie_moy@fd.org**
**856-757-5341**
**Attorney for Defendant**
**Brandon Anthony**

<u>PROCEDURAL HISTORY AND STATEMENT OF FACTS</u>

On December 1, 2010, ATF Special Agent Joshua Green obtained a sealed search warrant for the residence located at 1028 Fairmont Avenue, Third Floor, Elizabeth, New Jersey.  At the time, Mr. Anthony was the leaseholder of the residence.  He sublet rooms in the apartment to Towan Campbell and others.  The basis of the search warrant was information supplied by an unknown informant.  The informant falsely claimed that Mr. Anthony was a drug trafficker and that he had "purchased" a business with illegal drug profits.  The informant further false claimed that Mr. Anthony possessed firearms.  A drug detection canine with the Union County's Sheriff's officer "alerted" to illegal drugs when he sniffed the bottom of Mr. Anthony's apartment door.

On December 3, 2010 at 6:15 a.m., members of the ATF along with officers of the Elizabeth Police Department and Union County Sheriff's Department executed the warrant.  Mr. Anthony was not present; per his habit, he had left the residence early that morning to go to his place of business, "Lucy Stilettos."  His roommate, Towan Campbelll, was present.  The officers found no evidence of drugs or drug trafficking in the residence.  They did recover three firearms, two in Mr. Campbell's padlocked bedroom.  A third weapon, a .25 caliber pistol, was recovered in the rear bedroom under the mattress.  Under the same mattress, but located in a separate area, the officers found a motorcycle title belonging to Mr. Anthony as well as some dated receipts.  Ammunition for the firearms was also recovered.

On or about February 7, 2011 following a routine traffic stop, Mr. Anthony was arrested on an arrest warrant that had been issued in relation to this matter.  Prior to that date, Mr. Anthony had continued to reside at the same residence in Elizabeth and had continued operating his known place of business in Irvington.  Mr. Anthony was advised of this Miranda rights and waived those rights.  When asked why a well-educated business man would illegal possess a firearm, Mr. Anthony said that he did not own or possess any guns.  Mr. Anthony also stated that he was not using the bedroom in question and was unaware of any firearms under that mattress.  Mr. Anthony was arrested.  A one-count indictment charging him with possessing a firearm by a convicted felon, in violation of Title 18 U.S.C. § 922(g)(1),[1] was unsealed that same day.  Following his arrest, the defendant made his initial appearance in Federal Court before Magistrate Judge Joseph A. Dickson and was released on bail.  On February 24, 2011, Mr. Anthony appeared before Your Honor and entered a plea of Not Guilty on the indictment.  An Order for Discovery and Inspection was entered by the Court on the same day. Pursuant to that Order, these motions follow.

The defense submits that not only was Mr. Anthony not in possession or control of any firearms recovered from his residence, he did not have any knowledge of any such firearms within in residence.  Further, Mr. Anthony is not a drug trafficker and never

---

[1]The grand jury appears to have returned the indictment on February 3, 20111. Additionally, the indictment also included a forfeiture allegation pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c).

stored any illegal substances in his apartment.  Finally, the allegations that Mr. Anthony possessed firearms and trafficked in heroin, cocaine, and crack false.  Equally false is the claim that Mr. Anthony used illegal drug proceeds to start his business, Lucky Stilettos.  Mr. Anthony had previously worked for both Bank of America and Dish Network; Mr. Anthony utilized his personal savings and his 401k funds to finance the start up of Lucky Stilettos.

I.   **THE GOVERNMENT SHOULD BE COMPELLED TO DISCLOSE THE IDENTITY OF THE CONFIDENTIAL INFORMANT AND OTHER CRITICAL INFORMATION REGARDING SAID INFORMANT.**

In Roviaro v. United States, 353 U.S. 53, 59 (1957) the Supreme Court recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." However, there are several limits on this governmental privilege.  First, "where the disclosure of the contents of the communication will not tend to reveal the identity of an informer, the contents are not privileged.  Id. at 60.  Second, "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer available."  Id.  Third, "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of and accused, or is essential to a fair determination of a cause, the privilege must give way."  Id. at 60-61.  In assessing whether disclosure is appropriate, the district court must balance "the public interest in the flow of information against the individual's right to prepare his defense."  Id. at 62.  The factors the court must consider include "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  353 U.S. at 62.  If the government refuses to disclose the information after the court orders revelation of the identity of the informer, the district court may dismiss the action.  Id. at 61.

In Roviaro, the government shielded the identity of an informant who participated

in a drug transaction with the defendant.  The Court emphasized that the charge, "when viewed in connection with the evidence at trial," was "so closely related to [the informer] as to make his identity and testimony highly material." 353 U.S. at 63.  The informer's testimony was also highly relevant to the defendant's ability to move forward with a defense.  Id.

Roviaro also teaches that the defense does not need to show that the informer's testimony will necessarily be helpful to the defense.  Rather, the Court explained that the informer's testimony in that case "may have been helpful to the defense" in that it "might have disclosed an entrapment," he "might have testified to petitioner's lack of knowledge," and he "might have thrown doubt upon petitioner's identity or the identity of the package."  Id. at 63-64.  In short, "the desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the government to decide."  Id. at 64.

In making the determination whether disclosure is warranted in a given case, the defendant must first proffer a reason why disclosure is necessary.  United States v. Jiles, 658 F.2d 194, 197 (3rd Cir. 1981).  After the defendant has proffered a need for disclosure, the court must weigh the need against the government's reasons for keeping the identity confidential.  Id. at 198.   In this case, the informant's identity is necessary because the primary basis for the search warrant is the informant's false allegation that Mr. Anthony knowingly possessed firearms and was a large scale drug trafficker.  The government has

not asserted that this is a "reliable" informant who has provided information in the past. How or why the informant contacted the ATF agent is unclear.  The motive of informant is likewise unclear.  The informant claims that he or she has been in Mr. Anthony's residence on prior occasions, raising the possibility that the informant had a personal grudge with Mr. Anthony or his roommate.  This information is highly relevant to the defense.  For instance, the information is relevant to a possible frame-up defense; meaning the informant may have been the one to have planted the firearm in question.  While the government is asserting that Mr. Anthony had constructive possession of the firearm, the only person who claims he or she observed Mr. Anthony actually possessed any firearm is the informant.  Since the defendant states he did not possess any firearm and did not have knowledge of any firearm in his residence, the informant's identity is critical to preparation of the defense case.  Without the disclosure of the informant's identity, the defendant in this case is completely unable to cross-examine the only witness who claims to have seen Mr. Anthony in possession of any firearm.

In this case, the government has not asserted a particular reason for confidentiality.  The government will presumably argue that confidentiality is required to protect the informer's identity for the future or to protect the informer from retaliation.  There is nothing in the evidence to indicate that the government has an ongoing relationship with the informer that must be kept secret so that the informer's usefulness in the future is not ruined.  Nor is there any evidence that the informer would be in danger if his or her

identity were revealed.  This is not a drug case, for instance, in which the informer either needs to be able to carry on an ongoing investigation, or in which the informer's life is at risk because other gang members would retaliate if the identity were revealed.

On the other hand, if the informant is not a one-time tipster, but someone who was paid for this information, defendant is entitled to know that.  If he or she has a prior criminal record, defendant is entitled to know that.  If he or she is or was facing charges based on this or other conduct, defendant is entitled to know that.

For these reasons, the defendant respectfully requests that the court order disclosure of the identity of the confidential informant in this case.

II.    **THE EVIDENCE SEIZED FROM MR. ANTHONY'S APARTMENT SHOULD BE S SUPPRESSED BECAUSE THE AFFIDAVIT SUBMITTED TO SUPPORT THE APPLICATION FOR THE WARRANT TO SEARCH WAS BOTH MISLEADING BECAUSE OF MATERIAL STATEMENTS AND INSUFFICIENT DUE TO VAGUENESS.**

The Fourth Amendment to the United States Constitution provides that no search warrant shall issue without a showing of probable cause for the search.  U. S. Const., amend. IV.  "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."  Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)); Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." Maryland v. Garrison, 480 U.S. 79, 85 (1987).

Even where an affidavit is found to contain probable cause, a defendant may challenge the search warrant on the ground that the affidavit contains intentional or recklessly false statements, or omissions of fact, that tend to mislead the judge who issued the warrant.  United States v. Williams, 989 F.2d 1061, 1066 (9th Cir. 1993); see Franks v. Delaware, 438 U.S. 154 (1978).  A defendant is entitled to an evidentiary hearing upon a substantial preliminary showing that a false statement (or omission) was intentionally or recklessly included in the affidavit, where the false statement was necessary to the finding

of probable cause.  <u>Franks</u>, 438 U.S. at 155-56; <u>United States v. Harvey</u>, 2 F.3d 1318, 1323 (3rd Cir. 1993).

A defendant does not need clear proof of deliberate or reckless misstatements or omissions to obtain an evidentiary hearing.  <u>United States v. Stanert</u>, 762 F.2d 775, 780-81, <u>amended</u>, 769 F.2d 1410 (9th Cir. 1985).  Rather, "[s]uch proof is reserved for the evidentiary hearing . . . . At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted [or misstated] facts required to prevent technically true statements in the affidavit from being misleading."  <u>Id.</u> at 781.

In the case of intentional or reckless omissions from an affidavit, the affidavit is evaluated for probable cause as if the omitted information were included in the affidavit.  <u>United States v. Frost</u>, 999 F.2d 737, 743 (3rd Cir. 1993).  When the affidavit contains information provided by an informant, the defendant must show that the affiant knew of or recklessly disregarded the informant's lack of truthfulness.  <u>United States v. Brown</u>, 3 F.3d 673, 678 (3rd Cir. 1993).  "The effect of misrepresentations and omissions on the existence of probable cause is to be considered cumulatively."  <u>United States v. Kiser</u>, 716 F.2d 1268, 1274 (9th Cir. 1983); <u>Accord</u>, <u>United States v. Williams</u>, 3 F.3d 69, 74 (3rd Cir. 1993).

If after an evidentiary hearing the district court concludes that the judge who issued the warrant "was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," the warrant is invalid and evidence obtained during the unlawful search must be suppressed.  <u>Stanert</u>,

762 F.2d at 780 (citing <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984)).  "There is no 'good faith' exception to the <u>Franks</u> doctrine:  a warrant based upon knowing or recklessly made falsehoods in the affidavit will be invalid."  <u>Mills v. Graves</u>, 930 F.2d 729, 733 (9th Cir. 1991); <u>Accord</u>, <u>Williams</u>, 3 F.3d at 74, n.4 (citing <u>United States v. American Investors of Pittsburgh</u>, 879 F.2d 1087 (3rd Cir. 1989)).

In this case, the first material misstatement in the application concerns the false claim that Mr. Anthony was a large scale drug trafficker who stored and sold large quantities of heroin, cocaine, and crack from his residence.  Mr. Anthony denies the allegations made in the affidavit.  The search of his residence did not uncover any evidence of controlled substances, not even a single marijuana cigarette.  There were no scales, packaging, or large amounts of money found in the residence.  Further, while the ATF agents surveyed the location to discern whether Mr. Anthony came and went from the location, the agents apparently did not observe any foot or vehicle traffic consistent with the sale of narcotics.

Second, the claim that Mr. Anthony used illegal drug proceeds to purchase, or finance, his business, Lucky Stilettos, in Irvington, New Jersey is also false.  Mr. Anthony has a long history of working for established businesses, including his employment as an auditor for Bank of America from 2000 until 2008 and his subsequent employment with Dish Network from 2008 until March  2010.  In 2003, he obtained a tax id number for his promotion company, Lucky Handz.  He is a tax paying, hard working businessman who files yearly tax returns detailing his income.  Mr. Anthony resigned from his sales position

at Dish Network in March of 2010 in order to work full time for himself through both his Lucky Handz promotions and his new store, Lucky Stilettos, which opened in April 2010.

The affidavit in support of the search warrant is also vague and unreliable with respect to the information allegedly gathered from the confidential informant.  First, the affiant fails to indicate that the confidential source provided him with reliable information *in the past*, a key factor for an affiant in assessing the veracity and truthfulness of an informant.  See United States v. Brown, 3 F.3d at 676-77 (affidavit stated that the informant had proven reliable in the past by supplying information that led to arrest and conviction of several individuals for possession); United States v. Calisto, 838 F.2d at 715 ("[The] source of the information was correctly represented to be a confidential source who was reliable and who was believed by his law enforcement contact to be reliable based on several experiences in the past when the information provided had been subsequently confirmed.")  A hearing is warranted to assess whether the informant ever gave the agent information in the past, and, if so, whether it was reliable on those occasions such that his reliance on his or her statements in this case was warranted.

The absence of any information regarding the informant seems to infer that the informant is a disinterested tipster who has no reason to lie or to curry favor with the government.  However, it is clear from the information in the affidavit that, if true, the informant has much more information.  The witness was somehow aware of alleged large scale drug trafficking and possession of multiple firearms in Mr. Anthony's residence.

Individuals who traffick in large quantities of controlled substances and who possess firearms in connection with those drugs conceal such evidence from persons outside the conspiracy.  Therefore, if the allegations are true,  it is highly unlikely that the informant is simply a disinterested citizen.  The defense is unaware of the identity of the informant and is unable to provide information concerning his or her motives to lie or other biases.  However, the fact that this witness allegedly possessed peculiar knowledge of drugs and guns present in the residence creates a substantial question of whether the affiant recklessly "took his or her word for it" without inquiry before using the information in his affidavit.  These material facts should have been disclosed to the magistrate judge as they implicated the reliability, motives and potential biases of the cooperating witness.

The defendant respectfully submits that the inclusion of the material misstatements about Mr. Anthony's occupation and source of income and the failure to include information about the motives and possible criminal history of the confidential informant completely eviscerated the protection afforded by the warrant requirement.  The magistrate judge was given a fanciful impression about the nature of the case against the defendant and the quality of the information that was being provided.  The magistrate judge was misled into believing that Mr. Anthony had no lawful source of income for his business.  Had the Court been provided with an accurate picture of Mr. Anthony's employment history and financial background and the nature and motives of the confidential informant, the application for a search warrant would have been subjected to far greater scrutiny and

would not have issued.  The significance of the misleading statements strongly suggest that the conduct was a calculated effort to obtain a search warrant under false pretenses. Accordingly, the evidence seized should be suppressed.

## III.   THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE DEFENDANT WITH ALL MATERIAL WHICH WOULD EXCULPATE HIM OR MITIGATE HIS CULPABILITY.

Defendant moves under Federal Rules of Criminal Procedure 12(b)(1) and 16 for an order directing the government to disclose all evidence which is favorable and material to him, including information which would exculpate him or mitigate his culpability.  Due process considerations require the Government to disclose evidence favorable to the accused or detrimental to the Government's case.  Brady v. Maryland, 373 U.S. 83 (1963). A prosecutor's failure to reveal Brady material may result in the reversal of a defendant's conviction.  See, e.g. United States v. Galvis-Valderamma, 841 F. Supp. 600 (D.N.J. 1994). The individual prosecutor responsible for a case "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police", and has an inescapable responsibility to "disclose known, favorable evidence rising to a material level of importance."  Kyles v. Whitley, 514 U.S. 419, 437-38 (1995).

The Brady holding imposes an affirmative duty on the prosecution to produce, at the appropriate time, requested evidence that is materially favorable to the accused, either as direct or impeaching evidence.[2]  Brady is not a rule of discovery; it is a rule of fairness

---

[2]  Knowledge or possession of exculpatory evidence is imputed to the prosecutor as the agent of the government.  The government has constructive knowledge or constructive possession of information when "a prosecutor has no actual knowledge [but] he should nevertheless have known that the material at issue was in existence."  United States v. Joseph, 996 F.2d 36, 39  (3d Cir. 1993), cert. denied, 510 U.S. 937 (1993).  A prosecutor should know information exists when that information was known to the "prosecution team." United Sates v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

and minimum prosecutorial obligation.  <u>United States v. Starusko</u>, 729 F.2d 256, 262 (3d Cir. 1984).  Indeed, the standard order for discovery and inspection in this District incorporates such a requirement.  Furthermore, any doubt as to whether information is <u>Brady</u> material should be resolved in favor of disclosure. <u>United States v. Agurs</u>, 427 U.S. 97, 108 n.4 (1976); <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982).

This requirement of candor by the sovereign includes any information which concerns a witnesses' credibility as well as matters cogent to the guilt or innocence of the accused. <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985); <u>Giglio v. United States</u>, 405 U.S. 150 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).  In holding that impeachment evidence falls within the <u>Brady</u> rule, the Court stated,

> [t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that the defendant's life or liberty may depend.

<u>Napue v. Illinois</u>, 360 U.S. at 269.  The Third Circuit more recently reiterated this rule:

> Materials that must be disclosed are those that go [to] the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness.

<u>United States v. Hill</u>, 976 F.2d 132, 134-35 (3d Cir. 1992) (<u>citing</u> <u>Giglio v. United States</u>, 405 U.S. at 154, and <u>United States v. Higgs</u>, 713 F.2d 39 (3d Cir. 1983), <u>cert. denied</u>, 464 U.S. 1048 (1984)).

Pursuant to these principles, the defendant requests that the Court order the government to produce the following material:

1.  Any and all information tending to show that the defendant did not have dominion and control of the gun seized on December 3, 2010.

2.  Any and all information tending to show that persons other than the defendant had dominion and control of the gun seized on December 3, 2010.

3.  Any and all information tending to show that the source(s) of the information provided to the police department has provided unreliable information in the past, has a criminal record of any kind, and/or is unknown to the police.

4.  The results of any and all tests, including DNA and fingerprint tests.

5.  Any and all records and information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not limited to relevant "rap sheets," of each witness the prosecutor intends to call at trial.

6.  Any and all records and information revealing prior or subsequent misconduct, criminal acts or bad acts of the confidential informant or any witness the prosecutor intends to call at trial including, without limitation, allegations of criminal conduct of which the prosecutor knows, or through reasonable diligence, should have reason to know.

7.  The dates and a description of any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police, or informers, to or on behalf of the informant or any witness the prosecutor intends to call at trial, or any such considerations or promises expected or hoped for by any such witness at any future time.

8.  Any electronic, written or oral statement, whether or not reduced to writing, made by the informant or any potential prosecution witness which in any way contradicts or is inconsistent with or different from other oral or written statements he has made, and any such statement made by any person, whether a witness or not, which in any way contradicts, or is inconsistent with or different from any statement made by a prosecution witness.

9.  The name, address and other identifying information of the confidential informant in the government's possession.

There can be no question, moreover, that the right to disclosure under <u>Brady</u> includes the right to pretrial discovery by the defense. Materials must be disclosed to the defendant for their effective use at trial. <u>United States v. Agurs</u>, 427 U.S. 97 (1976). Defendant submits that due process mandates pretrial disclosure of <u>Brady</u> materials in the present case. Defense counsel must be given sufficient time to evaluate the favorable material and prepare for its presentation at trial. Exculpatory information may lead to other potential witnesses or defenses and the need for additional investigation.

The government's obligation to furnish much of the requested information once trial has begun, pursuant to the Jencks Act, 18 U.S.C. § 3500 (1982), does not absolve the government from providing it at a much earlier date as <u>Brady</u> material. Classification as Jencks Act material does not exempt such material from a pretrial disclosure order based on <u>Brady</u>. If both <u>Brady</u> and the Jencks Act cover certain evidence, <u>Brady</u> governs the timing of the evidence's production. <u>United States v. Starusko</u>, 729 F.2d at 263 (compliance with Jencks Act does not necessarily satisfy due process concerns of <u>Brady</u>); <u>United States v. Gatto</u>, 746 F. Supp. at 475. <u>See also United States v. Shifflett</u>, 798 F. Supp. 354 (W.D. Va. 1992); <u>United States v. Gallo</u>, 654 F. Supp. 463 (E.D.N.Y. 1987). <u>But see United States v. Jones</u>, 612 F.2d 453, 455 (9th Cir. 1979), <u>cert. denied</u>, 445 U.S. 966 (1980); <u>United States v. Hart</u>, 760 F. Supp. 653 (E.D. Mich. 1991).

If the Court determines due process does not demand pretrial production, then defendant requests that the Court, nonetheless, order pretrial disclosure. The Court may,

even when trial disclosure would satisfy due process, order early disclosure of <u>Brady</u> material.  <u>United States v. Higgs</u>, 713 F.2d 39, 44 n. 6 (3d Cir. 1983) ("the district court, within its discretion, may order [pretrial] disclosure to ensure the effective administration of the criminal justice system." (citations omitted)).  The Third Circuit specifically recognized that it was this Circuit's "long standing policy" to encourage "early production" of <u>Brady</u> material.  <u>United States v. Starusko</u>, 729 F.2d at 261 (citations omitted).

Accordingly, the government should be ordered to disclose the information requested.

IV.     <u>**THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A WRITTEN SUMMARY OF THE TESTIMONY OF ANY EXPERT THE GOVERNMENT INTENDS TO INTRODUCE AT TRIAL UNDER RULES 702, 703, AND 705 OF THE FEDERAL RULES OF EVIDENCE**</u>

An amendment to Rule 16 of the Federal Rules of Criminal Procedure, effective December 1, 1993, augments the discovery to which a defendant is entitled in advance of trial.  Rule 16 now provides that should the Government intend to seek the introduction in its case in chief of the testimony of an expert under rules 702, 703, and 705 of the Federal Rules of Evidence, it must disclose a written summary of that testimony upon request.  Fed. R. Crim. P. 16(a)(1)(E).  The synopsis must set forth the qualifications of the witness, the opinion of the witness, and the bases and reasons relied upon in support of that opinion. <u>Id.</u>  Defendant now requests the disclosure of this written synopsis.

## V.   THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE BEFORE TRIAL ALL PRIOR CONDUCT EVIDENCE IT INTENDS TO USE AND THE COURT SHOULD REQUIRE A PRETRIAL HEARING TO DETERMINE THE ADMISSIBILITY OF SUCH EVIDENCE.

The defendant requests an order that requires the government to disclose prior to trial evidence of any prior conduct it intends to use as either impeachment material or as direct proof of illegal conduct.  In addition, Mr. Anthony requests a pretrial hearing to determine the propriety of the government's use of such material.  Rule 404(b) of the Federal Rules of Evidence permits the government to offer evidence of other crimes, wrongs or acts to prove a defendant's motives, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Federal Rule of Evidence 608 permits the government to inquire into prior specific conduct of a witness upon cross-examination if, in the discretion of the Court, such inquiry is probative of truthfulness or untruthfulness.

The purpose of requesting pretrial disclosure of the government's intentions in this regard is to obviate the need for curative instructions, to provide counsel an opportunity to meet the proffered other crimes evidence in the course of its opening remarks to the jury, to weigh the crucial decision of whether an accused should exercise his right to testify and to allow counsel to investigate the evidence and effectively prepare for trial.  The Court should consider the Sixth Amendment rights of the defendant in this regard.  In making a determination under either of these rules, the Court must balance the probative value of the evidence against its prejudicial character.  If it is prejudicial character substantially

outweighs its probative value, the evidence is inadmissible.  Fed. R. Evid. 403; United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979); United States v. Goichman, 547 F.2d 778, 782 (3d Cir. 1976).  In the balancing process, the Court should consider factors such as the impeachment value of the prior acts, the remoteness of the prior acts, the similarity of the past acts to the present, the importance of the defendant's testimony, and the centrality of the credibility issue.  See, for example, United States v. Paige, 464 F. Supp. 99, 100 (E.D. Pa. 1978) (application to Fed. R. Evid. 609(a)(1)); see also, United States v. Hans, 738 F.2d 88 (3d Cir. 1984) (court excluded prior conviction based on its similarity to the present offense).

The primary problem presented by other crimes evidence is that it is particularly persuasive on the issue of the defendant's propensity to commit crime, and this use of such evidence is impermissible.  United States v. Long, 574 F.2d 761, 766 (3d Cir.), cert. denied, 439 U.S. 985 (1978); Cf. United States v. Schwartz, 790 F.2d 1059 (3d Cir. 1986).  A jury hearing other crimes evidence, whether it is admitted as circumstantial evidence under Rule 404(b), or for impeachment purposes under Rule 608, is likely to conclude "if he did it before, he probably did it this time."  See e.g., Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968).  Indeed, courts have long acknowledged that "the average jury is unable, despite curative instructions, to limit the influence of a defendant's criminal record to the issue of credibility."  United States v. Puco, 453 F.2d 539, 542 (2d Cir. 1971), cert. denied, 414 U.S. 844 (1972); see also United States v. Figueroa, 618

F.2d 934, 943 (2d Cir. 1980) (recognizing instances where instructions to a jury cannot overcome prejudice); United States v. Palumbo, 401 F.2d 270, 273 (2d Cir. 1968) (courts should consider the propensity of a prior conviction to influence the minds of jurors improperly), cert. denied, 394 U.S. 947 (1969).

Given the number of factors the Court must examine, and the need for fundamental fairness, this hearing and its determination should, it is respectfully submitted, be conducted prior to trial.  This procedure has been applied by various courts and is recommended by leading authorities.  "[It is] appropriate to rule in advance that attacks on the defendant through bad acts will be limited in order to induce him to the stand. . . ."  3 Weinstein & Berger, Weinstein's Evidence, par. 608 [05], p. 608-30 (1978).

> [A] trial judge does have power in the  exercise of sound discretion to make
> an advance ruling prohibiting the use of a prior conviction for impeachment
> of a defendant if he finds that a prior conviction negates credibility only
> slightly but creates a substantial chance of unfair
> prejudice . . . .

United States v. Puco, 453 F.2d at 541 (quoting United States v. Palumbo, 401 F.2d at 273); see also United States v. Provenzano, 620 F.2d 985 (3d Cir.) (on motion in limine, court excluded one prior conviction which was too prejudicial and not probative of truthfulness), cert. denied, 449 U.S. 899 (1980); United States v. Cavender, 578 F.2d 528 (4th Cir. 1978).  But see Huddleston v. United States, 485 U.S. 681 (1988).

In addition to assisting the Court by permitting a pretrial balancing of the factors relevant to the admission of such evidence, early disclosure and pretrial determination of

the admissibility of prior convictions and acts serves the valuable purpose of enabling counsel to aid the defendant to make other decisions intelligently.  See Weinstein & Berger, Weinstein's Evidence, par. 609 [03a], p. 609-70 (1978).

In the instant matter, Mr. Anthony is unaware of the nature of any prior act evidence which the government might attempt to offer at trial.  If the government intends to introduce evidence of a prior conviction, prior "bad acts," or to cross-examine the defendant with respect to "bad acts" or prior convictions, it is respectfully requested that the government be required to disclose its intention prior to trial so that the defendant can have an adequate opportunity to investigate the incidents.  The defendant further requests that a pretrial hearing be conducted to determine the propriety of the government's use of any such evidence.

## VI.   THE DEFENDANT SHOULD BE PERMITTED TO FILE ANY ADDITIONAL MOTIONS WHICH MAY BECOME NECESSARY

The defendant respectfully seeks permission to reserve the right to file additional motions which become necessary or applicable to him on the basis of additional information.  Several of the motions filed request the production of information by the Government which might trigger the need for additional motions to be filed on behalf of the defendant.  Under Federal Rule of Criminal Procedure 12(e), the Court may grant leave to file motions previously not raised for good cause shown.  The discovery or disclosure of new information necessitating such motions would constitute good cause.

## CONCLUSION

For the reasons stated, it is respectfully requested that the relief sought herein be granted.

Respectfully submitted,

*s/ Maggie F. Moy*

MAGGIE F. MOY
Assistant Federal Public Defender
Attorney for Defendant
Brandon Anthony


Dated:        January 11, 2012